## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| **HUMAN RIGHTS DEFENSE CENTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **Case No.  1:20-cv-2979** |
| **ROBERT E.  CARTER, JR., Commissioner,** | ) | |
| **in his official and individual capacities,** | ) | |
| **RON NEAL, WILLIAM "BILL" HYATTE,** | ) | |
| **MARK SEVIER, DUSHAN ZATECKY,** | ) | |
| **RICHARD BROWN, JOHN GALIPEAU,** | ) | |
| **DANIEL BODLOVICH, MICHELLE** | ) | |
| **METCALF, JOSHUA WALLEN,** | ) | |
| **in their individual capacities, and** | ) | |
| **DOES 1–6, in their individual capacities.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

COMES NOW Plaintiff, HUMAN RIGHTS DEFENSE CENTER, by and through its counsel, for its Complaint against Defendants Robert E. Carter, Jr., Ron Neal, Daniel Bodlovich, Michelle Metcalf, Joshua Wallen, William Hyatte, Mark Sevier, Dushan Zatecky, Richard Brown, John Galipeau, and Does 1–6 (collectively, "Defendants"), stating as follows:

### I.       INTRODUCTION

1.       The Human Rights Defense Center ("HRDC") brings this action to enjoin Defendants' improper censorship of its books, its monthly journals *Prison Legal News* and *Criminal Legal News*, and other materials that HRDC sends to prisoners in the Indiana Department of Correction ("IDOC"), in violation of the First and Fourteenth Amendments of the United States Constitution.

2.     Defendants have adopted and implemented mail policies and practices prohibiting delivery of written speech from HRDC.  Defendants have improperly censored books mailed by HRDC to prisoners in their facilities by instituting an approved vendor policy that only allows books to be distributed from Amazon and Edward Hamilton (the "Approved Vendor Policy").  In addition, Defendants have censored various issues of HRDC's monthly journals, *Prison Legal News* and *Criminal Legal News*, which contain important communications about legal issues and current events, including how prisoners can protect their health and safety during the global pandemic.  Defendants have failed to provide ***any*** notice, much less notice that complies with the requirements of due process, of the above censorship, and HRDC has no opportunity to challenge the censorship.

3.     Defendants' actions violate HRDC's rights under the First and Fourteenth Amendments of the United States Constitution.  HRDC thus brings this action, pursuant to 42 U.S.C. § 1983, seeking injunctive and declaratory relief and damages to be proven at trial.

## II.     JURISDICTION AND VENUE

4.     This action arises under the First and Fourteenth Amendments of the United States Constitution and is brought pursuant to 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to HRDC by the laws of the United States.

5.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343.  This Court has jurisdiction over claims seeking declaratory, injunctive, and monetary relief pursuant to 28 U.S.C.  §§ 2201 and 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure, against all Defendants.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).  On information and belief, at least one Defendant resides within this judicial district, and a substantial part of the events giving rise to the claims asserted herein occurred within this judicial district.   On information and belief, all Defendants are residents of the State of Indiana.

### III.    PARTIES

7.      HRDC is a not-for-profit charitable corporation recognized under § 501(c)(3) of the Internal Revenue Code, with its principal place of business in Lake Worth, Florida.  Founded in 1990, HRDC publishes the monthly newsprint journal *Prison Legal News*, the longest-running independent newsprint journal concerning prisons and detention centers in the United States, as well as other publications focusing on prisoner rights issues, including *Criminal Legal News*. HRDC also publishes and distributes a number of different softcover books about criminal justice policies and related legal and educational topics of interest to prisoners and corresponds regularly with prisoners regarding constitutional issues and potential violations of their civil rights.

8.      Defendant Robert E. Carter, Jr.  ("Carter") is the Commissioner of IDOC, having held that position continuously since January 17, 2017.  IDOC is the state agency that manages the correctional facilities within the State of Indiana.  Defendant Carter has ultimate responsibility for the promulgation and implementation of IDOC policies, procedures, and practices and for the management of IDOC.  As to the injunctive claim presented herein against him, Defendant Carter is being sued in his official capacity; as to the damages claim presented herein, Defendant Carter is being sued in his individual capacity.  At all relevant times, Defendant Carter has acted under color of state law.

9.      Defendant Ron Neal ("Neal") is, and on information and belief at all relevant times herein mentioned was, the Warden of Indiana State Prison ("ISP"), a prison under the control of

IDOC within the State of Indiana.  Defendant Neal has responsibility for the execution of IDOC policies, procedures, and practices at ISP.  As to all claims presented herein against him, Defendant Neal is being sued in his individual capacity for damages.  At all relevant times, Defendant Neal has acted under color of state law.

10.     Defendant Daniel Bodlovich ("Bodlovich") is, and on information and belief at all relevant times herein mentioned was, the Supervisor of Classification at ISP.  Defendant Bodlovich carried out IDOC policies, procedures, and practices at ISP in regards to publication review and censorship, including executing State Form 11984 sent to prisoners at ISP notifying them of withheld printed matter.  As to all claims presented herein against him, Defendant Bodlovich is being sued in his individual capacity for damages.  At all relevant times, Defendant Bodlovich has acted under color of state law.

11.     Defendant Michelle Metcalf ("Metcalf") is, and on information and belief at all relevant times herein mentioned was, the Administrative Secretary at ISP.  Defendant Metcalf carried out IDOC policies, procedures, and practices at ISP in regards to publication review and censorship, including executing State Form 11984 sent to prisoners at ISP notifying them of withheld printed matter.  As to all claims presented herein against her, Defendant Metcalf is being sued in her individual capacity for damages.  At all relevant times, Defendant Metcalf has acted under color of state law.

12.     Defendant Joshua Wallen ("Wallen") is, and on information and belief at all relevant times herein mentioned was, the Correctional Officer at ISP.  Defendant Wallen carried out IDOC policies, procedures, and practices at ISP in regards to publication review and censorship, including executing State Form 11984 sent to prisoners at ISP notifying them of withheld printed matter.  As to all claims presented herein against him, Defendant Wallen is being

4

sued in his individual capacity for damages. At all relevant times, Defendant Wallen has acted under color of state law.

13. Defendant William "Bill" Hyatte ("Hyatte") is, and on information and belief at all relevant times herein mentioned was, the Warden of Miami Correctional Facility ("Miami"), a prison under control of IDOC within the State of Indiana. Defendant Hyatte has responsibility for the execution of IDOC policies, procedures, and practices at Miami. As to all claims presented herein against him, Defendant Hyatte is being sued in his individual capacity for damages. At all relevant times, Defendant Hyatte has acted under color of state law.

14. Defendant Mark Sevier ("Sevier") is, and on information and belief at all relevant times herein mentioned was, the Warden of New Castle Correctional Facility ("New Castle"), a prison under control of IDOC within the State of Indiana. New Castle is privately run by the GEO Group, Inc. but is state-owned. Defendant Sevier has responsibility for the execution of IDOC policies, procedures, and practices at New Castle. As to all claims presented herein against him, Defendant Sevier is being sued in his individual capacity for damages. At all relevant times, Defendant Sevier has acted under color of state law.

15. Defendant Dushan Zatecky ("Zatecky") was, on information and belief at all relevant times herein mentioned, the Warden of Pendleton Correctional Facility ("Pendleton"), a prison under control of IDOC within the State of Indiana. Defendant Zatecky had responsibility for the execution of IDOC policies, procedures, and practices at Pendleton. As to all claims presented herein against him, Defendant Zatecky is being sued in his individual capacity for damages. At all relevant times, Defendant Zatecky had acted under color of state law.

16. Defendant Richard Brown ("Brown") was, on information and belief at all relevant times herein mentioned, the Warden of Wabash Valley Correctional Facility ("Wabash Valley"),

a prison under control of IDOC within the State of Indiana. Defendant Brown had responsibility for the execution of IDOC policies, procedures, and practices at Wabash Valley. As to all claims presented herein against him or her, Defendant Brown is being sued in his individual capacity for damages. At all relevant times, Defendant Brown had acted under color of state law.

17. Defendant John Galipeau ("Galipeau") is, and on information and belief at all relevant times herein mentioned was, the Warden of Westville Correctional Facility ("Westville"), a prison under control of IDOC within the State of Indiana. Defendant Galipeau has responsibility for the execution of IDOC policies, procedures, and practices at Westville. As to all claims presented herein against him, Defendant Galipeau is being sued in his individual capacity for damages. At all relevant times, Defendant Galipeau has acted under color of state law.

18. The true names and identities of Defendants DOES 1 through 6 are presently unknown to HRDC. Each of Defendants DOES 1 through 6 are or were employed by and are or were agents of IDOC when some or all of the challenged inmate mail policies and practices were adopted and/or implemented. Each of Defendants DOES 1 through 6 were personally involved in the adoption and/or implementation of the mail policies and practices at the IDOC facilities, and/or were responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and/or control of IDOC facilities staff who interpret and implement these mail policies. HRDC will seek to amend this Complaint as soon as the true names and identities of Defendants DOES 1 through 6 have been ascertained.

## IV. FACTUAL ALLEGATIONS

### A. HRDC'S MISSION

19. For almost thirty years, the focus of HRDC's mission has been public education, advocacy, and outreach on behalf of, and for the purpose of assisting, prisoners who seek legal

redress for infringements of their constitutionally guaranteed and other basic human rights. HRDC's mission, if realized, has a salutary effect on public safety.

20.     HRDC engages in core protected speech and expressive conduct on matters of public concern, such as the operation of prison facilities, prison conditions, prisoner health and safety, and prisoners' rights.  HRDC's monthly journals and other publications, as described below, contain political speech and social commentary, which implicate core First Amendment rights and are entitled to the highest protection afforded by the United States Constitution.

21.     HRDC publishes and distributes an award-winning monthly magazine titled *Prison Legal News*, which contains news and analysis about prisons, jails, and other detention facilities, prisoners' rights, court rulings, management of prison facilities, prison conditions, and other matters pertaining to the rights and/or interests of incarcerated individuals.  The monthly journal is published on newsprint and is 72 pages long.

22.     More recently, HRDC also began publishing a second monthly magazine titled *Criminal Legal News*.  This magazine focuses on the review and analysis of individual rights, court rulings, and news concerning criminal justice-related issues.  *Criminal Legal News* is also published on newsprint and is 48 pages long.

23.     HRDC also publishes and/or distributes dozens of different softcover books about the criminal justice system, legal reference books, and self-help books of interest to prisoners. These books are designed to foster a better understanding of criminal justice policies and to allow prisoners to educate themselves about related issues, such as legal research, how to write a business letter, health care issues, and similar topics.  Pertinent to this case, HRDC publishes and/or distributes the following books, among others: (a) the *Disciplinary Self-Help Litigation Manual*, which describes the procedural and substantive complexities of prison and jail disciplinary

proceedings; (b) the *Prisoners' Guerilla Handbook to Correspondence Programs in the U.S. and Canada*, a book that offers a complete description of more than 160 programs ideal for prisoners seeking to earn high school diplomas, associate, baccalaureate, and graduate degrees, and vocational and paralegal certificates; (c) the *Diabetes Handbook*, which contains health related information helpful to prisoners with diabetes; (d) the *Prison Education Guide,* a comprehensive guide to correspondence programs for prisoners that provides prisoners step-by-step instructions on how to find the right educational program, enroll in courses, and complete classes to meet their academic goals; (e) the *Criminal Law Handbook: Know Your Rights, Survive the System*, which explains how the criminal justice system works, why police, lawyers, and judges do what they do, and what suspects, defendants, and prisoners can expect; (f) *How to Win Your Personal Injury Claim*, a guide on how to make the best case for yourself and win your personal injury claim; (g) the *Merriam-Webster Dictionary*; (h) the *Merriam-Webster Dictionary of Law*; (i) *The Best 500 Non-Profit Organizations for Prisoners & Their Families*, a comprehensive, up-to-date resource of non-profit organizations specifically for prisoners; and (j) *Beyond Bars, Rejoining Society After Prison*, a current, practical, and comprehensive guide for ex-convicts and their families about managing a successful reentry into the community.

24.     In addition to its monthly magazines and books, HRDC also sends prisoners (a) informational brochure packets containing a brochure and subscription order form, a book list, and a published books brochure (each of which is a single page); (b) renewal postcards when prisoners' subscriptions to HRDC's magazines are ending; and (c) letters that provide other information pertinent to incarcerated people.

25.     HRDC has thousands of subscribers in the United States and abroad, including prisoners, attorneys, journalists, public libraries, judges, and members of the general public.

HRDC has distributed its monthly publications to prisoners and law librarians in more than 3,000 correctional facilities located across all 50 states, including the Federal Bureau of Prisons and prisons and jails in the State of Indiana.

26.     *Prison Legal News* and *Criminal Legal News* are popular among inmates in Indiana. As of May 7, 2020, HRDC had 47 subscribers to its monthly publication *Prison Legal News* within IDOC, including two at Branchville Correctional Facility, one at the Chain O'Lakes Facility, five at ISP, four at Miami, six at New Castle, seven at Pendleton, two at Plainfield Correctional Facility, one at Rockville, fourteen at Wabash Valley, and five at Westville.  HRDC also had 17 subscribers to *Criminal Legal News*, including one at ISP, one at Miami, five at Pendleton, one at Plainfield Correctional Facility, eight at Wabash Valley, and one at Westville.  Additionally, in furtherance of its mission and to increase the dissemination of its message, HRDC sends individually addressed sample copies of its publications to non-subscriber prisoners within IDOC.

## B.    CENSORSHIP AT IDOC FACILITIES

27.     The First Amendment of the United States Constitution protects HRDC's right to communicate with prisoners who are incarcerated within IDOC.  Regulations, policies, or practices that restrict the receipt of mail by prisoners are invalid unless they are rationally related to a legitimate penological interest.

28.     The Fourteenth Amendment of the United States Constitution requires that publishers receive notice of and be allowed to challenge restrictions on prisoners' receipt of mail. Regulations, policies, or practices that do not provide these minimum procedural safeguards are constitutionally invalid.

29.     IDOC does not comply with the First and/or Fourteenth Amendments.  Defendants' policies and practices have deprived and will continue to deprive HRDC of the right to distribute

its materials to prisoners in IDOC, and of notice or opportunity to appeal when its publications are not delivered to prisoner subscribers. IDOC has implemented an Approved Vendor Policy that prevents delivery of HRDC's books to prisoners at Defendants' facilities. IDOC's website states that "[b]ook companies Amazon and Edward Hamilton will be the only suppliers of newly printed matter allowed into the facility." (*See* **Exhibit A**.)

30.     The designation of only two approved suppliers is unconstitutional because HRDC does not have any alternative means to distribute its books to IDOC prisoners. The guidelines therefore place a significant burden on HRDC's First Amendment rights.

31.     IDOC's Policy and Administrative Procedure number 02-01-103, ("Policy 02-01-103"), titled "Offender Correspondence," governs the delivery of mail to prisoners in IDOC custody. On information and belief, the version that is effective as of September 1, 2015 is the currently effective version.

32.     Policy 02-01-103 states, under Section II titled "Policy," "It is the policy of the Department of Correction that offenders shall be permitted to maintain contact with the community and persons in the community through the use of correspondence, printed materials and packages. The Department encourages the maintenance of community ties and relationships through correspondence as a means to enhance the offender's re-integration into the community upon release."

33.     Policy 02-01-103 states, under Section XIX titled "Printed Matter," that, subject to inspection, "[a]n offender may acquire or possess printed matter on any subject . . . . An offender must receive printed matter mailed directly from the publisher, the distributor . . . ."

34.     Policy 02-01-103 contains no provision for providing notice to a sender of rejected mail, nor is there a procedure by which a sender can appeal the censorship of its mail.

35.     Despite IDOC's stated policy of permitting offenders to maintain contact with the community, and as described in further detail below, prisoners in IDOC report that prisons within Indiana have failed to deliver issues of *Prison Legal News*, *Criminal Legal News*, books published and/or distributed by HRDC, and other mail sent by HRDC.  HRDC is informed and thereon believes that, as required by Policy 02-01-103[1], at least one staff member at each prison listed below (DOES 1–6), as well as the Warden of each prison, had direct knowledge of and were directly involved in each and every instance of censorship complained of below.

36.     The censorship of HRDC's publications is performed in a haphazard manner. Publications that are rejected at some IDOC facilities are delivered to the intended recipients at other IDOC prisons.

37.     HRDC is aware of at least the following specific examples of improper censorship and/or lack of notice by prisons within IDOC.

### 1.     CENSORSHIP AT ISP

38.     IDOC staff at ISP have censored numerous issues of *Prison Legal News* and *Criminal Legal News*.

39.     HRDC is informed and believes and thereon alleges that ISP has censored at least the following issues of *Prison Legal* News: July 2018, August 2018, September 2018, October 2018, November 2018, December 2018, January 2019, February 2019, March 2019, April 2019, May 2019, June 2019, July 2019, August 2019, September 2019, October 2019, November 2019, December 2019, January 2020, February 2020, March 2020, and April 2020.  HRDC is informed and believes that, although each of those issues was properly delivered to ISP, the issues were

---

[1] Section III.H defines "mail clerk" as "[t]he staff member(s) designated by the Superintendent to initially process and, when appropriate, inspect correspondence."

withheld from delivery to the prisoners by staff at the facility.  An exemplary copy of State Form 11984 sent to prisoners at ISP notifying them of withheld issues is attached as **Exhibit B.**  In the exemplary notice in **Exhibit B** sent to an HRDC subscriber, the notice states that the entire issue of *Prison Legal News* was withheld due to "various advertisements which charges a fee to partticipant [sic]."

40.     Additionally, HRDC is informed and believes and thereon alleges that in August 2018 prison staff rejected back issues of *Prison Legal News* (the November 2017, January 2018, and April 2018 issues) and *Criminal Legal News* (the December 2017 issue) that had been sent to a prisoner at ISP as a result of the prisoner's issues being censored.

41.     HRDC has never received any notice from IDOC regarding the censorship of HRDC's magazines at ISP.  None of the magazines censored at ISP were returned to HRDC.  This censorship of *Prison Legal News* and *Criminal Legal News* and the failure of Defendants Neal, Bodlovich, Metcalf, Wallen, and one or more DOES to provide adequate notice and explanation to HRDC violates HRDC's First and Fourteenth Amendment rights, as further detailed below.

## 2.     CENSORSHIP AT MIAMI

42.     IDOC staff at Miami have censored numerous issues of *Prison Legal News* and *Criminal Legal News*.

43.     HRDC is informed and believes and thereon alleges that IDOC staff at Miami have censored at least the following issues of *Prison Legal News*:  October 2018, August 2019, March 2020, and April 2020.

44.     HRDC is informed and believes and thereon alleges that IDOC staff at Miami returned the October 2018 issue of *Prison Legal News* to HRDC marked "Return to Sender" and

"Not at Miami Corr. Facility"; however, on information and belief, the recipient was still housed at the facility when the issue was censored.

45.     In addition, in April 2019, a prisoner at Miami ordered the *Disciplinary Self-Help Litigation Manual* from HRDC through Amazon.com.

46.     HRDC is informed and believes and thereon alleges that staff at Miami rejected the book and did not allow the prisoner to receive it.  **Exhibit C** shows a copy of State Form 11984 sent to a prisoner at Miami, which indicates that the book was confiscated because it was "not from an approved source" and subsequently "destroyed."

47.     HRDC has never received any notice from IDOC regarding the censorship of the *Disciplinary Self-Help Litigation Manual* at Miami.  The book was also not returned to HRDC.

48.     The notice provided to HRDC regarding the October 2018 issue of *Prison Legal News* was insufficient.  The censorship of the *Disciplinary Self-Help Litigation Manual* and the failure of Defendant Hyatte and one or more DOES to provide notice and explanation to HRDC violates HRDC's First and Fourteenth Amendment rights, as further detailed below.

### 3.     CENSORSHIP AT NEW CASTLE

49.     IDOC staff at New Castle have censored numerous issues of *Prison Legal News* and *Criminal Legal News*.

50.     HRDC is informed and believes and thereon alleges that New Castle has censored at least the following issues of *Prison Legal News*: August 2018, December 2018, January 2019, February 2019, May 2019, January 2020, and March 2020.

51.     HRDC is informed and believes and thereon alleges that New Castle has censored at least the following issues of *Criminal Legal News*: December 2019, January 2020, and March 2020.  **Exhibit D** shows an exemplary survey response sent to HRDC from a prisoner at New

Castle indicating that the prisoner has not received the December 2019 and March 2020 issues of *Criminal Legal News*.

52.    HRDC has not received any notice from IDOC regarding the censorship of HRDC's magazines at New Castle.  None of the magazines censored at New Castle were returned to HRDC.

53.    In July 2018, HRDC sent a prisoner a complimentary copy of the *Prisoners' Guerilla Handbook to Correspondence Programs in the U.S. and Canada*.

54.    HRDC is informed and believes and thereon alleges that staff at New Castle rejected the book and did not allow the prisoner to receive it.

55.    HRDC has not received any notice from IDOC regarding the censorship of the *Prisoners' Guerilla Handbook to Correspondence Programs in the U.S. and Canada* at New Castle.  The book was also not returned to HRDC.  This censorship of *Prison Legal News* and *Criminal Legal News* and the failure of Defendant Sevier and one or more DOES to provide adequate notice and explanation to HRDC violates HRDC's First and Fourteenth Amendment rights, as further detailed below.

### 4.    CENSORSHIP AT PENDLETON

56.    IDOC staff at Pendleton have censored several issues of *Prison Legal News*.

57.    HRDC is informed and believes and thereon alleges that Pendleton has censored at least the following issues of *Prison Legal News*: May 2018, June 2018, July 2018, August 2018, May 2019, October 2019, November 2019, December 2019, January 2020, February 2020, March 2020, and July 2020.

58.    Moreover, it appears that the July 2018 and August 2018 issues of *Prison Legal News* were confiscated by staff at Pendleton and that staff at the facility informed at least some of the intended recipients using State Form 11984 that the issues were being withheld, indicating,

14

"PROHIBITED PROPERTY," "NEWSPAPER DENIED BY I.I.," "SECURITY RISK/OFF/OFF," and "AVOID MAIL DELAY, ADVISE SENDER THIS IS NOT ALLOWED". An exemplary copy of State Form 11984 sent to a prisoner at Pendleton is attached as **Exhibit E**.

59.     HRDC is informed and believes and thereon alleges that Pendleton has censored at least the June 2018 and October 2018 issues of *Criminal Legal News.*

60.     HRDC has not received any notice from IDOC regarding the censorship of the HRDC's magazines at Pendleton.  Furthermore, none of the magazines censored at Pendleton were returned to HRDC, except for one copy of the May 2018 *Prison Legal News* issue and one copy of the May 2019 *Prison Legal Ne*ws issue.  The May 2018 issue was returned marked "REFUSED," "RETURN TO SENDER," and "DUPLICATE COPY OF MAGAZINE OR NEWSPAPER NOT ALLOWED PER POLICY."  The May 2019 issue was returned marked "RETURN TO SENDER," "UNABLE TO IDENTIFY," "NO FORWARD ADDRESS," and "NO LONGER HERE," although, on information and belief, the recipient was still being housed at the facility.

61.     Additionally, in February 2019, HRDC mailed a copy of the books *Prison Education Guide*, *The Criminal Law Handbook, How to Win Your Personal Injury Claim 9th Edition*, the *Merriam-Webster Dictionary, Merriam-Webster's Dictionary of Law*, *The Best 500 Non-Profit Organizations for Prisoners & Their Families*, and *Beyond Bars*: *Rejoining Society After Prison* in three separate book packages to a prisoner at Pendleton.

62.     HRDC is informed and believes and thereon alleges that staff at Pendleton rejected the books and did not allow the prisoner to receive them.  The packages were returned to HRDC's office marked "Not Approved," "RETURN TO SENDER," "REFUSED," and "UNABLE TO FORWARD."

63.     The notice provided to HRDC was insufficient.  The censorship of *Prison Legal News*, *Criminal Legal News*, and the books mailed to the Pendleton prisoner in February 2019 and the failure of Defendant Zatecky and one or more DOES to provide notice and explanation to HRDC violates HRDC's First and Fourteenth Amendment rights, as further detailed below.

## 5.     CENSORSHIP AT WABASH VALLEY

64.     IDOC staff at Wabash Valley have censored several issues of *Prison Legal News*.

65.     HRDC is informed and believes and thereon alleges that Wabash Valley has censored at least the following issues of *Prison Legal News*: March 2019, June 2019, July 2019, October 2019, May 2020, June 2020, and July 2020.  **Exhibit F** shows an exemplary survey response sent to HRDC from a prisoner at Wabash Valley indicating that he has not received the March 2019, June 2019, July 2019, or October 2019 issues of *Prison Legal News*.

66.     HRDC has not received any notice from IDOC regarding the censorship of HRDC's magazines at Wabash Valley.  None of the magazines censored at Wabash Valley were returned to HRDC.  This censorship of *Prison Legal News* and the failure of Defendant Brown and one or more DOES to provide adequate notice and explanation to HRDC violates HRDC's First and Fourteenth Amendment rights, as further detailed below.

## 6.     CENSORSHIP AT WESTVILLE

67.     IDOC staff at Westville have censored issues of *Criminal Legal News*.

68.     HRDC is informed and believes and thereon alleges that Westville has censored at least the following issues of *Criminal Legal News*: February 2020 and March 2020.

69.     HRDC has not received any notice from IDOC regarding the censorship of HRDC's magazines at Westville.  None of the magazines censored at Westville were returned to HRDC.

70.     In February 2019, HRDC mailed a copy of the *Diabetes Handbook* to a prisoner at Westville.

71.     On March 10, 2019, staff at Westville rejected the book and did not allow the prisoner to receive it.  It was returned to HRDC's office marked "RTS" and "Cant [sic] have." **Exhibit G** shows an image of the return envelope showing the writing on this package.

72.      The notice provided to HRDC concerning the *Diabetes Handbook* was insufficient, and the censorship of *Prison Legal News* and *Criminal Legal News* and the failure of Defendant Galipeau and one or more DOES to provide notice and explanation to HRDC violates HRDC's First and Fourteenth Amendment rights, as further detailed below.

* * * *

73.     On information and belief, Defendants have censored numerous other mailings from HRDC to prisoners in IDOC.

74.     For every instance of censorship listed above, Defendants failed to give HRDC adequate notice that its materials were rejected and did not provide any opportunity to challenge the rejection.

75.     On July 30, 2018, HRDC sent a certified letter to Defendant Carter informing him of the illegal censorship of HRDC's materials and the lack of due process and adequate notice given to HRDC by IDOC's facilities and requesting that he correct these actions.  Defendant Carter did not respond to the letter.

76.     On June 23, 2020, HRDC sent another certified letter to Defendant Carter renewing its objections to IDOC's censorship and failure to provide due process and requesting immediate remedial action be taken.  Defendant Carter did not respond to the letter.

* * * *

77.     In adopting and implementing the above censorship policies and practices, Defendants have knowingly violated, continue to violate, and are reasonably expected to violate in the future, HRDC's constitutional rights, and have caused HRDC serious and irreparable harm including, but not limited to the suppression of its political message, frustration of its organizational mission, loss of its ability to recruit new supporters, subscribers, and writers, loss of subscriptions, loss of opportunities for purchases and sales of its publications, loss of opportunities for book sales, and diversion of its resources.  Absent intervention by this Court, these actions will continue and HRDC will be subjected continuation of the same irreparable and serious injuries.

78.     The above violations of HRDC's rights and the harms to HRDC were caused by mail and censorship policies adopted or approved by Defendant Carter in his capacity as Commissioner of IDOC.

79.     The individual Defendants named herein are responsible for, or personally participated in, creating and implementing these unconstitutional mail and censorship policies, practices, and customs, and for training and supervising the mail staff at the various IDOC facilities who carry out these policies and whose conduct has injured and continues to injure HRDC.

80.     Defendants' unconstitutional policy, practices, and customs are ongoing and continue to violate HRDC's rights, and as such HRDC has no adequate remedy at law.

81.     HRDC is entitled to injunctive relief requiring Defendant Carter to prohibit IDOC and the individual Defendants from refusing to deliver or refusing to allow delivery of publications, books, informational brochures, catalogs, and other correspondence from HRDC, and prohibiting IDOC from censoring mail without due process of law.

82.     As a result of the foregoing, HRDC seeks compensatory and punitive damages against the individual Defendants.

**COUNT I: Violation of the First Amendment (Censorship) – 42 U.S.C. § 1983**

83.     HRDC re-alleges and incorporates by reference herein all of the allegations contained in the above paragraphs.

84.     The acts described above constitute violations of HRDC's rights under the First Amendment of the United States Constitution.

85.     HRDC has a constitutionally protected liberty interest in communicating with incarcerated individuals, a right clearly established under existing case law.

86.     Defendants' conduct was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference.

87.     HRDC's injuries and the violations of its constitutional rights were directly and proximately caused by the policies and practices of Defendants, which were and are the moving force of the violations.

88.     Defendants' acts described above have caused damages to HRDC, and if not enjoined, will continue to cause damage to HRDC.

89.     HRDC seeks injunctive relief against Defendant Carter in his official capacity, and nominal and compensatory damages against all Defendants.  HRDC seeks punitive damages against the individual Defendants in their individual capacities.

**COUNT II: Violation of the Fourteenth Amendment (Due Process) – 42 U.S.C. § 1983**

90.     HRDC re-alleges and incorporates by reference herein all of the allegations contained in the above paragraphs.

91.     The acts described above constitute violations of HRDC's rights under the Fourteenth Amendment to the United States Constitution.

92.     Because HRDC has a liberty interest in communicating with prisoners, HRDC has a right under the Due Process Clause of the Fourteenth Amendment to receive notice of and an opportunity to appeal Defendants' decisions to censor their written speech.

93.     Defendants' policies and practices failed to provide HRDC with adequate notice and an opportunity to be heard.

94.     Defendants' conduct was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference.

95.     HRDC's injuries and the violations of its constitutional rights were directly and proximately caused by the policies and practices of Defendants, which are and were the moving force of the violations.

96.     Defendants' acts described above have caused damages to HRDC, and if not enjoined, will continue to cause damage to HRDC.

97.     HRDC seeks injunctive relief against Defendant Carter in his official capacity, and nominal and compensatory damages against all Defendants.  HRDC seeks punitive damages against the individual Defendants in their individual capacities.

## V.     RELIEF REQUESTED

WHEREFORE, HRDC respectfully requests judgment against Defendants, jointly and severally, for the following:

A.     A declaration that Defendants' policies and practices violate the Constitution;

B.     A preliminary and permanent injunction requiring Defendant Carter to prohibit IDOC and the individual Defendants from continuing to violate the Constitution, and providing other equitable relief;

C.      An award of compensatory, punitive, and nominal damages;

D.      An award of full costs and attorneys' fees arising out of this litigation; and

E.      Any and other further relief this Court may deem just and appropriate.

## VI.      DEMAND FOR JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, HRDC hereby demands a

trial by jury in this action of all issues so triable.

Dated:                                          Respectfully submitted,

                                                /s/ Richard A. Waples
                                                Richard A. Waples
                                                WAPLES & HANGER
                                                410 N. Audubon Road
                                                Indianapolis, IN 46219
                                                Tel.: (317) 357-0903
                                                rwaples@wapleshanger.com

                                                Kenneth G. Schuler, Ill. Bar No.: 6226036*
                                                kenneth.schuler@lw.com
                                                Marc N. Zubick, Ill. Bar No.: 6308239*
                                                marc.zubick@lw.com
                                                Sarah W. Wang, Ill. Bar No.: 6322872*
                                                sarah.wang@lw.com
                                                Kirsten C. Lee, Ill. Bar No.: 6330011*
                                                kirsten.lee@lw.com
                                                Greer M. Gaddie, Ill. Bar No.: 6332696*
                                                greer.gaddie@lw.com
                                                LATHAM & WATKINS LLP
                                                330 North Wabash Ave., Suite 2800
                                                Chicago, Illinois 60611
                                                Tel.: (312) 876-7700
                                                Fax: (312) 993-9767

                                                Daniel Marshall, Fla. Bar No.: 617210*
                                                dmarshall@hrdc-law.org
                                                HUMAN RIGHTS DEFENSE CENTER
                                                P.O.  Box 1151
                                                Lake Worth, FL 33460
                                                Tel.: (561) 360-2523
                                                Fax: (561) 828-8166

                                                *Attorneys for Plaintiff*

*pro hac vice* applications to be filed